Case number 231278, Trey Cholewa v. USA et al., argument not to exceed 10 minutes per side. Mr. Knott, you may proceed for the appellant. May it please the Court. Good morning, Your Honors. I essentially have two issues. One issue is a very standard summary judgment should have been granted in this sex harassment case because the plaintiff's memory is so uncertain as to what occurred. And in fact, the objective record disputes his claims. So the objective record includes his statements. So for instance, he cannot recall the first time he was touched in a sexual manner. Docket 58. By the way, Docket 58 is my key document. That is my second Westfall petition which relates deposition quotes and contains the factual record. That is the key thing to read in this file. You were not sure yourself whether it was really happening, I asked him in his deposition. That's why you made the recording. Yes, sir. And the recording doesn't show any sexual touching. Is there any testimony? Mr. Knott, you're not here appealing the denial of the summary judgment motion. You're here on the Westfall Act. I'm on both. The Westfall certification appeal includes the idea that there is a claim that exists. And so we raised these issues. But let me jump right into the respondeat superior question under Michigan law which is frankly really interesting because the Michigan Supreme Court has been all over the place as the politics of the elected judges changes in Michigan. I understand that you're suggesting that we should simply discount or discredit Mr. Chawla's testimony. Is that correct? Is there any testimony or evidence that rebutts his testimony? Yes. He stated that the only time... His own testimony rebutts his... Not only that. He stated August 11th, 2017 is the only day that he remembers having been touched. But there's no medical record supporting he was even seen at the VA on that day. Docket 58, page 11. So... What about this audio recording? The audio recording as discussed in Docket 58 we have testimony from a VA therapist who says, well it could have been a kind of badly executed version of trying to repeat back to him what he was saying to her. And so there's ambiguity. I mean, look, this doesn't look good especially in light of her taking the fifth not directly rebutting. But I don't think, if you just make this a regular sex harassment case, I don't think a prima facie case has been met here. Look at exactly what he's able to say and remember and look at what he can't. I don't think they have a case. But let me jump into responding at Superior unless there's a question. Yeah. One question I have just maybe to step back for a minute is what you said when I asked you about summary judgment is, well, the Westfall Act question assumes that the conduct occurred, right? So if... But I'm wondering whether... And the district court said there's a genuine issue of material fact on whether the conduct actually occurred in the summary judgment order. But on the Westfall Act question, wasn't the district court required to make actual findings of fact? And I don't know whether the district court actually did that, although your briefing seems to assume that it did. So I'm just interested in your question. Do you think the district court made findings of fact that this conduct occurred? I don't. I don't. I think Judge Strain is waiting for the jury to determine what findings of fact actually occurred. Is that permissible under the Westfall Act? I'm not sure that it is, Your Honor. So if it's not, what do we do about that? Well, I think... So your position is the district court did not make findings of fact. That's correct. Yeah. He just denied summary judgment that... And said there's a genuine issue. Right. And so I suppose one possibility is you could send it back for an evidentiary hearing on findings of fact. That is one possible path. Another path is to assume that in the event you'll treat this act as if he had made finding this appeal as if he'd made findings of fact, and then grapple with the question that you took on. What is Michigan law? What is Michigan law? And are the findings, these presumed findings of fact, clearly erroneous? I mean, you would want us to... I don't think it's a clearly erroneous standard here. What would it be? I think he has... I think it's a de novo review as to whether, since there's no evidentiary hearing that actually occurred, there's no deference. There's no deference. I mean, you have... You're in the same position he was in. He said he didn't need to hold an evidentiary hearing. I'm sorry? All the parties agreed that the district court didn't need to hold an evidentiary hearing, right? Right. So yeah. So why is there deference to a district court finding of fact if everything is based on the same written submission that you've got? There shouldn't be. And therefore, it shouldn't be clearly erroneous. It should be just like you'd be reviewing a motion for summary judgment denial. And what we have here is my argument, to be precise, is that the VA authorized Dr. Robinson to engage in transference and counter-transference with her patients, which, in the words of her immediate boss, Karen Parisian, Dr. 58, is a very tricky thing. Dr. Abella, clinical psychologist, deputy chief of staff, and Dr. Parisian both talk about transference and counter-transference as part of the job and the foreseeability of the risk of the provider, that is the psychiatrist, losing judgment. All of those cases out of the Michigan Supreme Court, and tons of cases which don't discuss transference and counter-transference, assume the sex predator model. You are solely interested in your individual action. The language in Med tells you what Michigan standard is. Are you acting solely in your personal interest, or is, in which case, I lose. Or could it be a mix? And here, because she's authorized to engage in this very tricky situation of transference and counter-transference, this young psychiatrist allegedly lost her way. That's a foreseeable risk, just like leaving the surgical tool in the body is a foreseeable risk, just like a malpractice case, and the Superior is liable. Thank you. Good morning, Your Honors. Christopher Desmond from Johnson Law on behalf of the plaintiff, Trey Haleba. Your Honors, so first of all, I'm going to start very quickly. I guess I had lost sight of the fact that Dr. Robinson was still maintaining an argument that summary to these issues, Judge Cole, you had stated, you know, is there any evidence that rebutts plaintiff's testimony? There's not. What we have here, I think it's very unfortunate, and I have tremendous respect for brother counsel, but I do think it's unfortunate the way that Mr. Haleba's deposition went. We're dealing with a United States Marine veteran who was, at the time of his discharge, deemed disabled as a result of the injuries he suffered while he was in the military. He suffered traumatic brain injuries and PTSD, which is why he was receiving the important mental health treatment that Dr. Robinson was supposed to be providing to him. The fact that there may be certain holes in his memory in terms of which dates certain acts occurred doesn't discount the fact that Dr. Robinson pled the fifth, which allows, under the United States Supreme Court precedent, allows for an adverse inference at the time of trial. In addition to that, we have the recording from Dr. Robinson, which certainly seems to allow a reasonable finder of fact to conclude that there was a relationship here where she implies that she believes she was in love with Mr. Haleba and seems to confirm his statements regarding the existence of physical acts between the two. And so I think that there's adequate issues of material fact here to support that denial of summary judgment. But turning to the issue, of course, in scope of employment, I agree with Brother Counsel that, you know, Judge Drain, when you look at his opinion, he focuses primarily on two Michigan opinions, which is the Hamed v. Wayne County opinion and the Zygo v. Hurley Medical Center opinion. Both of those opinions involve acts of forcible sexual misconduct, forcible sexual assault. Hamed v. Wayne County was a case involving a prison guard who was sexually assaulting an inmate. Zygo v. Hurley Medical Center was a case that involved a hospital employee who, according to the opinion, sexually assaulted a patient who was restrained at the time of the assault. And so there were no question in either of those cases that that employee was not in any way pursuing the interest of their master, which is what the test is in Michigan regarding course and scope of employment. Now I think where Judge Drain perhaps went amiss and what his opinion could have been better served by was conducting the type of analysis that was done in the Simmons case out of the Ninth Circuit, which we've cited in our brief, and the Benavides case, which was cited by the Tenth Circuit and is also cited in our brief. In both of those cases, the courts distinguish cases that arise out of the failure to manage the transference and countertransference phenomenons that are central to the therapeutic process. They explain what transference and countertransference are, and they further explain why cases like Zygo and like Hurley, although they're obviously not talking about those opinions specifically, or I'm sorry, Hamed, they talk about why cases like that are not analogous because of the change in setting. They talk about how in a case with a priest, for example, it is not the job of a priest when he's counseling people in marriage to engage in this close emotional relationship that leads to transference like this does. They talk about how in cases where you're dealing with things like forcible sexual assault, you don't have the same foreseeable risks that someone like Dr. Robinson faced when she was trying to manage this phenomenon. Now I think that our complaint also backs up this theory of the case that we have, which is that this is not a case that simply arises out of whatever the first act of sexual assault was. That's not our theory here. We're not simply saying that there was an injury because of the first physical sexual assault. This was medical malpractice from the very beginning of the relationship between my client and Dr. Robinson, and there was an extended period of time in that clinical relationship before Dr. Robinson engaged in improper physical conduct. So she began her improper mismanagement of transference from the very beginning when she started engaging in physical touch with my client when he was discussing the problems that he was having with intimacy in his marriage following his PTSD diagnosis. So from the very start, she is engaging in conversations with Mr. Haleva that were frankly unprofessional and breached the standard of care. Now those were not criminal acts at that point. Those were not the types of acts that Judge Drain was concerned would fall outside the course and scope of employment. And so I think this court needs to be looking at this set of facts from a big picture standpoint, an above ground standpoint where we're looking down at Dr. Robinson and saying that from the very beginning when she was certainly serving the VA hospital, she was certainly, that was her intent at that time, to serve Mr. Haleva and her job as a VA therapist. From the very beginning she was mismanaging it, causing my client injury. Yes. So it sounds to me like you, unlike Mr. Nacht, want us to look at this as one whole course of conduct. So in other words, for the Westfall Act purposes, you would say everything here was within the scope of employment. He wants to say some things were and some things weren't. I mean we didn't talk about that this morning, but it's in the briefing. So is that your position that for purposes of the Westfall Act we don't go sort of incident by incident? We go claim by claim and your claim is medical malpractice? And so we look at the whole scope of conduct and it's either all in or all out? Is that? In a way, Judge Larson, I agree that the entirety of my claim is a medical malpractice claim and I think this court needs to look from start to finish. But I also don't think there is any individual act here, when you look at it in context, that was outside the course and scope of her employment. When you look at a case, for example, opposing... What about these claims that Mr. Nacht brings up that involve like failing to give a timely referral or failing to chart all of the interactions with your client? Yeah, I think that's all part of... Those are all in? Yeah, that's all part of a breach of the standard of care that applies to a VA therapist. Yeah, so everything from your perspective is within the scope of employment. That's right, that's right, including... And you know, one thing I would sort of analogize it to, and I apologize because I realize that I don't have an example of this in my brief, but Hamed contemplates it. When Hamed concludes that the prison guard in that case was outside the course and scope of his employment, they talk about how he had no legitimate reason to be engaging in sexual misconduct with this inmate. Well, you can find other cases in Michigan. I'm not sure if there's a Michigan Supreme Court one. There's certainly ones from the Michigan Court of Appeals involving people whose jobs are more like, say, a bouncer or a security guard, where that person ultimately engages in something that's deemed an assault. It's a criminal act, but they're deemed to be in the course and scope of their employment at the time that they committed what ended up being a criminal act because that conduct of removing someone and physically interacting with someone as a security guard is inherent to your job. Yeah, but I think you have a difficulty there. So it is true, like assaulting somebody when you're a bouncer crosses a line, but you are serving your employer's interest by keeping the ne'er-do-well out of the nightclub. How is Dr. Robinson serving the VA hospital's interests by having sexual conduct with her client? That's the piece I don't get. Right. And so, Your Honor, that's why I would cite to, so Judge Drain's opinion has a pretty strong recitation of the facts where he explains how long this therapeutic relationship had existed in the office before it turned actually physical, right? And the entirety of that, Dr. Robinson was trying to manage the exact same issues that my client was having, these issues with intimacy and with his marriage. And so she begins to approach that process in the office by discussing physical intimacy issues with my client, touching my client, putting her hand on my client's leg, developing these bonds between my client and her, showing that he can connect with someone. That connection ends up eventually unraveling on both of their ends and going too far, right? And so I would say it's similar, and I understand why there would be cynicism toward this position, but just like a bouncer who's throwing someone out of a bar. Yeah, it helps the bar that that person is out of the bar. Did the bouncer need to throw them with force? Did the bouncer need to strike them when they were on the ground, when they were outside of the bar? You understand what I'm saying? There are degrees to which you engage in the conduct for your master, and your perception as an employee of what is permissible and what is not can be blurred when you're involved in that process. And that's why... Do you think that Drain did or did not actually make a factual finding, though, of whether... I don't think he did, Your Honor. I don't think he did. His opinion references that he has to. He notes that he has to, under the law, make these factual findings. Then he seems to sort of just give this broad view of, here's what the testimony was, here's what the parties say, and then he launches into the law. He calls it the alleged conduct. He does. But what do we do about that? I was going to ask the same question. Do you think we have to remand, then, for a factual finding? Personally, I think that there's an adequate record here that this court could say, assuming plaintiff's allegations are true, this was within the course and scope of Dr. Robinson's employment. With that said, I would understand if the court, before it reviewed that issue, thought that Judge Drain needed to make that first batch of factual findings. Perhaps in the process of making those factual findings and putting down on paper what he thinks Dr. Robinson did and did not do, perhaps that would also cause Judge Drain to change his mind about whether this was in the course and scope of her employment. Maybe this court gives guidance to Judge Drain in terms of, these are the factors you should be looking at on remand. But I don't personally view his opinion as making factual findings. It seems like he's crediting the allegations of my client, sort of assuming they're true, and saying, but even if they are, this is still outside the scope of Hamed and Zygo. But Hamed and Zygo simply don't speak to the factual situation that we have in front of the court today. I'd also like to acknowledge Judge Larson. As I was sitting here reviewing last night, I was like, well, the question is, what would a Michigan Supreme Court Justice do with this case? You were obviously a Michigan Supreme Court Justice at one point. That is no longer my... I know it's not. I know it's not. But it was an interesting aspect of this case as I was preparing. Thank you, Your Honors. Unless there are any other questions. Good morning, Your Honors. May it please the Court. Brad Darling appearing on behalf of the United States. Your Honors, the government would like to begin its argument focusing on the scope of employment question. And we do have two Supreme Court cases here that guide this Court's analysis as to what the Michigan Supreme Court's position of Michigan law would be. The first case is the Hamed case. And in that case, the Michigan Supreme Court said that we have consistently held that an employer's liability for the criminal acts of its employees is limited to those acts it can reasonably foresee or reasonably should have foreseen. This is because we should not expect employees to assume that their employees will disobey the law. Criminal conduct is inherently arbitrary and highly unpredictable. In this case, Your Honors, the district court made an explicit factual finding that the VA had no knowledge that anything was amiss between Dr. Robinson and Sgt. Haleva. Wait, where do you see any explicit factual finding in Judge Drain's opinion? I mean, he denied summary judgment. Correct, Your Honor. So there's a jury question. I guess I'm interested to know where the order makes any factual findings. Yes, Your Honor. In the order denying Dr. Robinson's Westfall Act petition, that's record 92, page ID 4488, the district court says, quote, there is no evidence that other VA employees knew of Robinson's alleged misconduct, close quote. It's the position of the government that that is a factual finding. And then further in the same paragraph, the district court goes on to say that there was no history of prior similar conduct from which the VA could gain constructive knowledge. So those are explicit factual findings. And I would also point out that neither Dr. Robinson nor Sgt. Haleva has pointed to any evidence in the record undercutting those findings, saying that somehow there was prior knowledge on behalf of the VA. Now, the alleged conduct here would constitute a criminal offense in the state of Michigan. It is fourth degree criminal sexual conduct for a mental health provider to have a sexual relationship with their patient while treatment is ongoing and for two years after treatment ceases. And consent is irrelevant. We're not suggesting that this was any type of consensual relationship, but that's irrelevant. It's a complete bar upon mental health providers having any type of sexual relationship with their patients. Well, the arguments on the other side seems to be that it doesn't really make a difference that there's a criminal law that would cover this or a VA policy would cover this, that it's foreseeable that a mental health professional might somehow mismanage, you know, transference and counter transference and end up in this sort of more extreme situation that they shouldn't be, but that it can't happen. Yes, Judge Cole. And I would sort of caution the court from finding that conclusion, essentially because that leads towards the aided by agency exception to respond to your superior law that the Michigan The second case that the government would point to is the Zygo case, that's Z-I-G-O, and that arose in the health care context. That was a case where a nursing assistant sexually assaulted a patient at a hospital. So that case is also instructive here. The district court went further, though, and acknowledged that there wasn't a Michigan Supreme Court opinion directly on point dealing with a mental health treater and looked to the Tolbert case, which was a district court opinion from the Eastern District of Michigan. That case involved a VA substance abuse counselor who had an improper sexual relationship with their patient, encouraged their patient to consume alcohol, and the district court there, while not binding here in any way, but certainly persuasive authority, found that that type of conduct is outside the scope of employment as a matter of law. I would also direct the court to the Michigan Court of Appeals case Doe v. Young that involved a chiropractor having sexually assaulting patients. The Michigan Court of Appeals followed Hamid, followed Zygo, and said that that conduct is meant to further the employee's individual interests and is no way meant to further the interests of the employer. To answer some of your previous questions to brother counsel here, Judge Larson, I don't believe that a remand for an evidentiary hearing would be appropriate here. The reason being, the district court explicitly asked all of the parties whether they requested an evidentiary hearing and all agreed that an evidentiary hearing was not required. Normally, Westfall Act decisions are made very early on in a case, and Dr. Robinson did move at the very outset of this litigation to have this matter certified and to have the United States substituted as the sole defendant. The district court denied that petition without prejudice and directed the parties to civil discovery. The parties conducted extensive civil discovery, took many, many depositions, exchanged a lot of documents, developed a full factual record, and had the opportunity to present all that to the district court so that it could make an informed opinion. Okay, but maybe the district court doesn't need to hold a live hearing, but maybe the district court still needs to make some factual findings. For example, I feel like we're operating in a world in which Judge Drain has said a reasonable jury could find that this sexual conduct occurred. Ms. Robinson, or Dr. Robinson, denies that the conduct occurred at all. Whether it occurred and what the scope or content of it was might matter both to the ultimate determination, but more importantly to the Westfall Act determination of what things are within the scope and what things are outside the scope. For example, the district court only talks about sexual misconduct, and then we have these other claims, like failure to make a timely referral. Was that influenced by the sexual misconduct? I mean, I don't know. So do we need to remand for the district court to decide those things? I would say no, Your Honor. To address the point that Dr. Robinson denied that the sexual conduct occurred, Dr. Robinson did not deny the sexual conduct occurred. She took the fifth. And the district court was able to draw an adverse inference from that. I would also point out that under the Westfall Act, it's Dr. Robinson's burden to show that she was acting within the scope of employment. She's required to show that by preponderance of the evidence. Dr. Robinson did not present any evidence that she was acting within the scope of her employment. During her deposition, she would testify about her education, her residency, her general training, but every time she was asked a question about any interaction with Sergeant Haleva, she took the fifth. Questions about medications, the number of appointments, things that happened during those appointments, she didn't testify to any of that. So on this record, there's simply no evidence for the district court to conclude that Dr. Robinson was acting within the scope of her employment, and a remand would serve no purpose assuming that she would take the fifth again to these questions. And so is your position then that she was acting outside the scope of her employment at all times? Because part of your briefing says, well, wait, we've never denied that as to these claims about failing to make a timely referral and the record keeping claims, we've never denied that those were within the scope of her employment, is what your briefing says. But I kind of feel like the Attorney General did deny that because he didn't grant the petition, and it's really the U.S. Attorney who didn't grant the petition. So I think the U.S. Attorney, your boss, says it's all outside the scope. It was never our position that this was all outside the scope. We did make that concession in the district court during the Westfall Act hearing. Wait, you made a concession that it was all outside the scope? No, that certain alleged acts are inside, within the scope of employment. So plaintiff's allegations that she didn't chart all of the appointments appropriately and did not provide him timely referrals to other mental health providers, we conceded in our brief before your honors, and we conceded below, that those acts are within the scope of employment. And both... Does that mean that, does that substitute as a certification by the U.S. Attorney? It seems like there's a process. The statute says the Attorney General, by which we mean the U.S. Attorney as his delegee, shall certify, and if he doesn't want to certify, then we go to court. And he didn't certify. So can you, in litigation, certify? And is that your position, that that's what you're doing? Well, these issues remain for trial. We're before your honors on interlocutory appeal. Right, but we can't go to trial. If Ms. Robinson has Westfall Act immunity, she's immune not only from liability, but from trial. Correct. So we can't go to trial to figure out whether she's immune, right? Well, the government's position is some of the conduct was within the scope of employment. Some of the conduct is outside the scope of employment. So it's a little bit of an unusual situation here, where there are certain allegations that the government does concede were within scope, and others that we can test. The allegations about sexual assaults, touching, all of that, it's our position that those are outside the scope of employment as a matter of law. And are there claims in this lawsuit that are sort of hybrid, that might depend on both these inside the scope and outside the scope sort of things, in order for Mr. Haleva to make his claim? You would need both of these things to, like Mr. Haleva seems to say, it's all one big course of action. And I need to prove all these different pieces, and they will add up to medical malpractice or negligence or whatever the claims are. And you say some of those things are within the scope and some of those things are outside the scope, and I don't know how to fit that into an immunity statute, where if she's immune for some of the acts, she's not even supposed to go to trial. It's a little bit of an unusual situation, Your Honor. Yes, so please help me figure out what to do about it. And I believe that it's appropriate, if the court does remand it, for both parties to go to trial, to make a finding that certain conduct was outside of the scope of employment, certain allegations inside the scope of employment. The United States would be liable for those alleged breaches, if at all. Those would be tried to the district court as a bench trial. Plaintiff's claims against Dr. Robinson would be tried to a jury, and the jury would determine the liability for the sexual assaults, for those types of things. So it is a little bit of a hybrid situation, where some conduct is within, some conduct is without, or outside. OK. Any more questions? Thank you, Your Honors. Mr. Knack, did you reserve some time for rebuttal? I did. I reserved two minutes, Your Honor. OK. So, I think what my friend, the Assistant U.S. Attorney, suggests is creative, but it just doesn't fit the statute. And I think there is no question, he concedes, that some of what's alleged by the plaintiff in the case falls within the scope. And that, I think, dooms his position, which is why you actually can avoid the unpleasant question as to whether alleged sexual touching in the context of transference is part of the scope of the duty. You can simply find in this opinion today, because some of plaintiff's claims admittedly fall within the scope of the job, that ends it. Right there, remand for trial against the United States of America, dismiss Dr. Robinson. I think that's the most straightforward application of the Westfall Act and FTCA. Wait a minute, do we, are you saying that we would have to buy your position on what Michigan law holds about sexual misconduct? No. No, what you're saying is, if any of the actions are within the scope, meaning the things about failing to make timely referrals, etc., it's all within the scope, and it's all or nothing, and the United States is the defendant. Yes. What about the First Circuit opinion that you relied on that said, we go incident by incident? I realize the First Circuit says that, but I think this is actually a better- You briefed it to us as your authority. I know. I know. But I think this is a better approach. I think it's a better approach. I think that's clearly what Congress intended in terms of the Westfall Act. It is an immunity statute. And I think it gets very mushy otherwise. That being said, if you do go that approach, I think that, frankly, Mr. Desmond's argument, much more articulate than my own, really nails it. It's just like the bouncer who then commits a criminal act of assault and battery. It is a foreseeable act. A boiler's testimony and Parisian's testimony provide a factual record. They're both in Docket 58. It's a factual basis in this case. Completely different from, say, U.S. Attorney cites a Fifth Circuit case and a Fourth Circuit case. They didn't get into transference, but no other case presented a factual record the way I did in this case where the VA itself acknowledges part of her job is to go down this transference, counter-transference problem, and it's foreseeable. All right. Thank you. We understand your argument. Thank you. Thanks to everyone for your briefing and arguments today. Thank you. Case is submitted, and we'll call the next one.